# 642 CASES IN THE SURROGATES' COURTS.

WESTCHESTER COUNTY.—HON. OWEN T. COFFIN,
SURROGATE.—June, 1884.

## MATTER OF WATSON.

*In the matter of the application of* MARY M. WATSON,
*an infant, for the appointment of a guardian ad
litem.*

The maxim "*boni judicis est ampliare jurisdictionem*" is one of Chancery
courts, and inapplicable to courts, like that of a Surrogate, of limited
statutory powers; it has reference to a judge's action upon the merits
or justice of a case; and justifies no judge in exceeding the limits of
his jurisdiction.

The only direct grant of authority to a Surrogate's court to appoint a
guardian *ad litem* for an infant is contained in Code Civ. Pro.,
§§ 2527 and 2530, which apply exclusively to cases where he has
been or is to be cited, or is already a party to a special proceeding
therein.

Sections 468–477 of that Code, regulating the mode in which infants may
bring and defend *actions* are not applicable to Surrogates' courts.

The origin and history of the practice of the prosecution of litigation on
the part of an infant by his *prochein amy*—traced.

There is no statutory provision requiring an infant to institute a special
proceeding in a Surrogate's court by a special guardian.

An infant, aged 19 years, residing in Vermont, united with her husband
in a petition to the Surrogate's court, showing that her mother was
dead, and her father was living and a resident of New Hampshire;
that petitioner was a person interested in the estate of her maternal
grandfather who had died in Paris, France, in 1881, and whose
alleged will had been admitted to probate by a decree of said
court in 1882; that the paper writing so admitted to probate was
not the will of said decedent; and praying that the court appoint a
special guardian for her, to enable her to move to vacate the decree
admitting the same, and to come in and contest the probate thereof.—

*Held*, that the court was without power in the premises; that the proper
practice was for the infant to petition in her own name for the relief
ultimately sought by her, whereupon a citation would issue to the
proper parties; upon the return of which citation, it appearing that
petitioner was an infant, a special guardian would be appointed to
protect her interests as a party to a pending proceeding.

IT appeared, from the petition presented, that the petitioner was nineteen years of age; that she was a resident of the state of Vermont, and the wife of Alfred S. Watson (who joined in the petition with her); that she was the daughter, only surviving child, heir at law and next of kin of Mary S. Carr, who was a daughter and one of the heirs at law and next of kin of John Anderson, late of Mount Pleasant, West-chester, County, deceased, and that her said mother died January 5th, 1882; that the father of the petitioner was living and resided in the state of New Hampshire; and that the petitioner had no general guardian in this State; further, that said John Anderson died No-vember 22nd, 1881, in Paris, France, and that the peti-tioner was entitled to a share of his estate; that on January 9th, 1882, application was made to this court for the admission of the will of said Anderson, dated October 25th, 1879, and a codicil thereto, dated Sep-tember 29th, 1881, to probate, and that, after sundry proceedings had, the same were, by decree made March 17th, 1882, admitted to probate. The petitioner then alleged, on information and belief, that said paper writings, so admitted to probate, were not the last will and testament and codicil, respectively, of said John Anderson, deceased. It was also alleged that, in order that the rights and interests of the minor might be pro-tected, it was necessary that a special guardian should be appointed for her, for the purpose of moving to vacate the decree admitting the will and codicil to pro-bate, and to permit her to come in and contest the pro-bate thereof. · Wherefore the petitioner prayed, her husband consenting thereto in writing, that Henry W.

Clark, of New Rochelle, Westchester county, counsellor at law, be appointed such special guardian. The written consent of Mr. Clark, to act as such, accompanied the petition.

GEORGE M. CURTIS, *attorney for petitioners.*

LOWREY, STONE & AUERBACH, *of counsel.*

THE SURROGATE.—Here is presented a question entirely novel in its character. Has this court the power to appoint a special guardian, as asked to do, under the circumstances. The learned counsel have not been able to refer me to any statute, or case reported, bearing upon it, nor have my researches been more successful. To repeat what has been so often declared by various tribunals, Surrogates' courts are of limited jurisdiction; exercising only such powers as are expressly conferred by statute, together with such incidental ones as necessarily spring from the grant of the main powers. The only direct authority, empowering this court to appoint a special guardian for an infant, is found in §§ 2527 and 2530 of the Code of Civil Procedure. The first of those sections has reference only to a case where an infant has been, or is to be, cited, and the second, to an infant who is already a party to a proceeding. Thus, power is conferred to make such appointment only in a pending proceeding. Article 4 of title 2 of chapter 5 of the Code, embracing §§ 468 to 477, regulates the mode in which an infant may bring and defend actions, to wit, through a guardian to be appointed by the court. By reference to subd. 3 and 4 of § 3347, it will be seen, however, that these·

provisions do not apply to Surrogates' courts. It is, nevertheless, urged by counsel, that "the infant, being entitled on general principles, to the protection of the court, the power to appoint, if not clear, should be sought for, not avoided;" and, in support of this view, they refer me to the maxim "*Boni judicis est ampliare jurisdictioncm*" (Chan. Prac., *329*). A good judge will, when necessary, extend the limits of his jurisdiction (Maxim 14, Wharton's Legal Maxims). Mr. Wharton comments thereon as follows: "The word '*jurisdictionem*' should be, according to Lord MANSFIELD, '*justitiam*,' and the meaning of the maxim, in such case, is that to be a good judge is to amplify in his office the remedies the law gives, so as, in the most perfect manner, to do the most complete justice, not letting substantial justice be frittered away by nice and unmeaning technicalities as a means of avoiding giving a decision according to very right, in broad and substantial justice. And this he has the power and authority to do in all those cases which, by the common law, by the practice of his court, and by legislative enactment, are left to his discretion—meaning by discretion the exercise of sound judgment upon the facts, or, as it is stated by Lord MANSFIELD to be— sound discretion guided by law, governed by rule, not humor; not arbitrary, vague, and fanciful, but legal and regular, according to the maxim, '*Discretio est discernere per legem quid sit justum.*' But the maxim does not mean that a good judge will exceed the limits of his jurisdiction, or that he will do anything other than that which, by the law and practice of his court, he is authorized to do." These remarks tend to show

that the invoking of this maxim by counsel, instead of aiding, rather militate against the view they urge. In the first place, it is a Chancery court maxim, and if it has any effect beyond that court, it must be confined to judges of courts of general and not limited statutory jurisdiction; in the second place, it would seem to have reference to a judge's action upon the merits or justice of a case ; and lastly, it is declared not to mean that a good judge will exceed the limits of his jurisdiction. This may be regarded as applying, with added force, to one who derives all his powers from statute law.

Before our first Code, an infant had to prosecute his action by his next friend, technically called *prochein amy*—or *ami*, and who was unknown to the law prior to the statute of 1 Westm., 3 Edw. 1st., ch. 47. "It is he who appears in court for an infant who sues any action, and aids the infant in pursuit of his action." The mode of procuring the appointment was then, and has since continued to be, very similar to that sought to be pursued in this case, but the proceeding was taken in courts having general jurisdiction (Jacobs Law Dict., Title, "*Prochein amy*"). The term then used, is now discarded, and the person appointed, either to institute or to defend an action for an infant, is denominated a special guardian, or guardian *ad litem*. It may be safe to say that, ever since the statute, 1 Westm., referred to, the various courts, except perhaps that of the Chancellor and of those on which his powers are devolved, in making the appointment, have found their authority to do so in some statute. This indicates the abiding solicitude of legislatures for the

welfare of the dependent and helpless ; for the protection of their person and property. No court, except as above, can take any step in regard thereto without legislative sanction.    Especially is this so in Surrogates' courts.    At the same time, infants may legally perform certain acts as if they were of age.    For instance, they may, at common law, act as executors at the age of seventeen, in all of the states except those where the rule has been changed by positive enactment (Tyler on Inf., and Cov., *41*).    In this State, they are made incompetent by statute.    Females are of age in Vermont at eighteen (id., *211*).    But that fact will not aid Mrs. Watson, as she is not of age here.    Still, she ought not to be deprived of the privilege of attempting to assert her alleged rights, and it would be a little remarkable if the state of our laws is such as to render her utterly helpless in this emergency.    I think a proper consideration of the provisions of the Code will furnish a solution of the difficulty.

It was held under the Revised Statutes, and probably the same doctrine prevails now, that if an infant should bring his action without *prochein ami* or guardian, it was a mere irregularity, and no ground of nonsuit, but that advantage could be taken of the irregularity only by plea in abatement (Tyler on Inf., and Cov., *194 ;* Schemerhorn v. Jenkins, *7 Johns., 373 ;* Fellows v. Niver, *18 Wend., 563*).    In such case, the court would doubtless retain the cause, and supply the defect by making the proper appointment.    So it would probably be in this court, if a minor were required to institute a proceeding here by a special guardian.    But there is no such provision.    On the contrary, the Code

implies this personal right of an infant to petition, by providing that a ward may, under §§ 2832 and 2837, institute, in his own person, proceedings against his general guardian ; and so under § 2846, he may, personally, present a petition to the court for the purpose therein indicated, and in either case, I am inclined to think, the court should appoint a special guardian, under § 2530, on the return day of the citation, when one is issued, for the ward who is a party to the proceeding.

Now the Code provides by § 2614, that a "person designated in a will as executor, devisee or legatee or any other person interested in the estate," etc., may present a petition for the probate of a will. Not unfrequently an infant is designated in a will as executor. A "person interested" is defined, by § 2514 subd. 11, to be "every person entitled, either absolutely or contingently, to share in the estate or the proceeds thereof, or in the fund, as husband, wife, legatee, next of kin, heir, devisee, assignee, grantee or otherwise, except a creditor." Here is no restriction as to age, or mental condition. *Any* "person interested" may do this. After having presented his petition, the Surrogate must issue his citation. When he has done that, the petitioner has become a party to a proceeding, and on the return day of the citation, if it appear that this party is an infant or a lunatic, and does not appear by his general guardian, or his committee, the Surrogate must, under § 2530, appoint a special guardian for him. By § 2647, "a person interested in the estate of the decedent" may petition for the revocation of probate. Here, also, there is no restriction as to age or condition of mind. The right is not confined to

a person of full age or sound mind.   It would only be on the return of the citation issued upon such petition that the court would have power to appoint a special guardian.   It is no longer necessary for an applicant to verify his petition before the Surrogate, but it may be done before any officer authorized to administer oaths. Suppose, therefore, a petition for the probate of a will duly verified in the city of New York, or elsewhere, and containing a statement of all the facts necessary to confer jurisdiction of the subject matter upon the court under § 2614, were presented through the mail, or in any other manner, the Surrogate must issue a citation, according to the prayer thereof.   He has no discretion upon the subject.   This he must do, in the absence of any informtion as to the age or sanity of the petitioner. On the return day, if it appear that the petitioner were a minor, a lunatic, or an habitual drunkard, the jurisdiction of the court would be in no way affected thereby; but it would, at once, proceed to appoint a special guardian for such petitioner, and the progress of the matter would be unimpeded.

I have thus endeavored to show, while denying the prayer of the petitioner in this case because I have no power to appoint a special guardian as desired, that there yet is a door through which she may enter, in search of such relief as she may deem herself to be entitled to.

Application denied.